UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS A. SANTANA, JR., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:21cv376(KAD) |
| | : | |
| ANGEL QUIROS, ET AL., | : | |
| Defendants. | : | |

**<u>INITIAL REVIEW ORDER</u>**

Plaintiff, Luis A. Santana ("Santana"), a sentenced inmate confined at the Cheshire

Correctional Institution ("Cheshire"), filed this civil rights action against Commissioner of

Correction Angel Quiros, Wardens Kenneth Butricks and Denise Walker, Deputy Warden

Jennifer Peterson[1] and District Administrator John Doe/Nick Rodriguez. He alleges, principally,

that the defendants violated his rights under the Eighth and Fourteenth Amendments by limiting

the number of hours he is permitted outside his cell for purposes of engaging in exercise or

recreational activities. For the reasons set forth below, the complaint is dismissed in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief." *Id.* In undertaking this review, the

court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest

arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)

---

[1] Santana has misspelled Warden Walker's first name as Dennise and has misspelled Deputy Warden Jennifer Peterson's last name as Petterson. *See* https://portal.ct.gov/DOC/Facility/Cheshire-CI. The Clerk is directed to revise the docket to reflect the correct spelling of Defendant Walker's first name as Denise and Defendant Jennifer Peterson's last name as Peterson.

(internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). [2]

## Allegations

In 2012, prison officials at MacDougall-Walker Correctional Institution ("MacDougall-Walker") transferred Santana to Cheshire, a Level 4 prison facility. *See* Compl., ECF No. 1, at 7 ¶ 8; at 9 ¶ 18. At the time, Santana had been placed in but had not completed the administrative segregation program. *Id.* at 7 ¶ 8.

On July 29, 2020, Santana sent an Inmate Request to Warden Butricks regarding the

---

[2] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

number of hours that he and other inmates in his housing unit were permitted to engage in out-of-cell activities each day and week, including indoor recreation or "leisure" activities, indoor and outdoor exercise activities and meals. *Id.* at 7-8 ¶¶ 9-14; at 17-21, Ex. A. At the time, Santana was confined in South Block 1 unit. *Id.* at 9 ¶ 21. Santana complained that Warden Butricks had limited him to: two hours each day for out-of-cell indoor recreational activities, including showers and making telephone calls; two hours each week for out-of-cell physical exercise; 15 to 20 minutes each day to eat lunch with other inmates, and 15 to 20 minutes to eat dinner with other inmates. *Id.* at 8 ¶¶ 13-14. He acknowledged that Butricks also permitted him to leave his cell on days that he was required to perform his prison job. *Id.* at 20, Ex. A. Santana informed Butricks that the insufficient opportunities to engage in outdoor and/or indoor physical exercise and indoor recreational activities had affected his mental health and could cause him "severe psychiatric harm." *Id.* at 8-9 ¶¶ 15, 17.

In his Inmate Request, Santana relied on the August 27, 2019 ruling granting summary judgment in favor of Inmate Richard Reynolds on an Eighth Amendment claim challenging conditions of confinement at Northern on the ground that the conditions constituted solitary confinement that posed a risk of substantial harm to Reynolds' mental health. *Id.* ¶ 19; at 46-102, Ex. E (*Reynolds v. Arnone*, Case No. 3:13cv1465(SRU) (Memorandum of Decision, ECF No. 155).[3]

---

[3] The court notes that the Defendants in *Reynolds*, appealed the summary judgment ruling and on March 11, 2021, the Court of Appeals for the Second Circuit affirmed the ruling in part and vacated the ruling in part. *See Reynolds v. Quiros*, 990 F.3d 286, 292-95, 302 (2d Cir. 2021). In pertinent part, the Second Circuit affirmed the ruling to the extent that it held that Defendants violated Reynolds' equal protection rights by arbitrarily assigning him an unreviewable Risk Level 5," vacated the ruling to the extent that it held that Defendants had violated Reynolds' rights under the Eighth Amendment because disputed issues of material fact existed as to whether Reynold's confinement could be characterized as solitary confinement, and remanded the case to the district court for further proceedings. *Id.*

Santana proposed that Warden Butricks permit him to engage in indoor recreational activities for three to four hours each day; to permit him to exercise or recreate outside each day; and to provide him with additional programming options. *Id.* ¶ 20. Santana also pointed out that prison officials at Cheshire were not using a courtyard that was adjacent to the South Block housing units for outdoor recreation. *Id.* ¶ 21. Warden Butricks did not respond to Santana's request and retired from his position as warden at Cheshire at some point before September 28, 2020. *Id.* at 7, 10, 12 ¶¶ 10, 26, 41.

On August 18, 2020, Santana filed a Level 1 grievance setting forth his complaints regarding the limited recreational and exercise opportunities that had been offered to him. *Id.* at 10 ¶ 23; Ex. A, ECF No. 1, at 22-23. He claimed that Warden Butricks was treating him differently than other similarly situated inmates in the TRUE unit at Cheshire and other inmates at MacDougall-Walker who had been convicted of similar criminal offenses and had more serious disciplinary histories. *Id.* at 10 ¶ 25; Ex. A, at 22. On September 28, 2020, after reviewing and investigating the allegations asserted by Santana, Deputy Warden Peterson concluded that prison officials had provided Santana with adequate opportunity for out-of-cell recreation, and that the periods of recreation provided met the standard under prevailing case law and did not violate the Constitution. *Id.* at 10-11 ¶¶ 27-30; Ex. A, at 22. Accordingly, she denied the grievance. *Id.* at 10 ¶ 26.

On September 30, 2020, Santana filed a Level 2 appeal of Deputy Warden Peterson's response to his Level 1 grievance. *Id.* at 11 ¶ 32; Ex. B, ECF No. 1, at 25. On November 12, 2020, District Administrator Doe/Rodriguez rejected the Level 2 appeal for two reasons and indicated that an appeal of his response to Level 3 would not be answered. *Id.* at 11-12 ¶¶ 33-36;

Ex. C, ECF No. 1, at 31.  On November 25, 2020, Santana filed a Level 3 appeal of District Administrator Doe/Rodriguez's rejection of his Level 2 appeal.  *Id.* at 12 ¶¶ 38-39; Ex. D, ECF No. 1, at 40-41.  On November 30, 2020, an administrative remedies coordinator returned the Level 3 appeal to Santana because District Administrator Doe/Rodriguez had checked off the box on the Level 2 appeal form indicating that an appeal to Level 3 would not be answered.  *Id.* at 12 ¶ 40; Ex. D, ECF No. 1, at 39.

**Discussion**

Based on these allegations, Santana asserts that the defendants violated his rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. He seeks declaratory and injunctive relief and monetary damages.

### Claims Asserted on Behalf of Other Inmates

As an initial matter, the court notes that Santana refers to conditions of confinement that have impacted him as well as other inmates in his housing unit at Cheshire.  *See* Compl. at 13-14 ¶¶ 47-49; Ex. A.  As a *pro se* litigant, Santana does not have standing to assert claims or requests for relief on behalf of other inmates who may be confined in his housing unit.  *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential [limit on standing is the] principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties.") (citing *Warth v. Seldin,* 422 U.S. 490, 499 (1975); *Singleton v. Wulff,* 428 U.S. 106, 113 (1976)).  Thus, to the extent that Santana intended to assert any claims on behalf of other inmates, those claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### Official Capacity Claims

Santana sues the defendants in their individual and official capacities. To the extent that he seeks compensatory and punitive damages from the defendants in their official capacities, those requests are barred by the Eleventh Amendment and are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity).

Santana also seeks declaratory judgment that the defendants violated his Eighth and Fourteenth Amendment rights. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek only prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas,* 207 F.3d 114, 120 (2d Cir. 2000). Santana's requests for a declaration that the defendants violated his federal constitutional rights in the past are therefore barred by the Eleventh Amendment as well. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief") (citations omitted). Accordingly, the requests for declaratory relief are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Eighth Amendment Claims**

Santana's Eighth Amendment conditions of confinement claim arises out of a combination of an inadequate opportunity for out-of-cell physical exercise and the concomitant

extended in-cell isolation. He also complains of inadequate visitation with family members.

Prison conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he or she faced a "substantial risk" to his or her health or safety and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835.

### Exercise and Isolation - Butricks, Peterson and Doe/Rodriguez

Santana alleges that Defendants Butricks, Peterson and Doe/Rodriguez denied him either indoor or outdoor exercise more than two times per week. He states that this limited opportunity to exercise constitutes a deprivation of a basic human need.

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court recognized that conditions of confinement may constitute an Eighth Amendment violation where they produce a "deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* at 304. In *McCray v. Lee*, 963 F.3d 110 (2d Cir. 2020), the Second Circuit observed that the rights of prisoners to a meaningful opportunity for physical exercise has been clearly established for decades. *Id.* at 120. However, prison officials may limit an inmate's right to out-of-cell exercise if "a valid safety exception or certain unusual circumstances" exist. *Gardner v. Murphy*, 613 F. App'x 40, 42 (2d Cir. 2015) (summary order) (citing *Williams v. Greifinger,* 97 F.3d 699, 704 & n. 5 (2d Cir. 1996)). When prison officials impose such a safety restriction, they "must perform "'a detailed review'" of feasible alternatives. *Id.* (quoting *Williams,* 97 F.3d at 705 (internal quotation marks and alterations omitted). Santana's allegation that defendants Butricks, Peterson and Doe/Rodriguez failed to provide him with a meaningful opportunity to engage in physical exercise absent a valid safety or disciplinary exception meets the objective prong of Eighth Amendment conditions standard.

Santana also alleges that Defendants Butricks, Peterson and Doe/Rodriguez subjected him to confinement in his cell for either 20 ½ hours or 21 ½ hours each day depending on his permitted out-of-cell activity for the day. Santana contends that such extended in-cell confinement has been detrimental to his mental health. In his July 2020 request addressed to Warden Butricks, Santana described the impact on his mental health due to spending so much time in his cell as: "difficulties thinking, concentrating, remembering things, and controlling [his] impulses." Compl. at 21, Ex. A. At this preliminary stage, these allegations are sufficient to meet the objective component of the Eighth Amendment standard. *See, e.g.*, *Darnell v.*

*Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to . . . mental soundness." *Id.* at 30 (internal quotation marks and citations omitted).

Santana alleges that he made Defendants Butricks, Peterson and Doe/Rodriguez aware, through the Administrative Procedures process, of the constitutional deprivation and its deleterious effects on his mental health. Santana contends that despite their knowledge of the detrimental effects of these conditions, these defendants refused to make changes to or correct the restrictive and potentially harmful conditions. These allegations are sufficient to meet the subjective prong of an Eighth Amendment claim. The claims that defendants Butricks, Peterson and Doe/Rodriguez subjected Santana to conditions that limited his opportunity to engage in meaningful physical exercise and required him to spend 20 ½ to 21 ½ hours in his cell to the detriment of his mental health will proceed for further development of the record.

### Exercise and Isolation - Quiros and Walker

Santana alleges that Warden Denise Walker was the "active warden" at the time that: Deputy Warden Peterson responded to his Level 1 grievance on September 28, 2020; he filed his Level 2 appeal on September 30, 2020; and he filed his Level 3 appeal on November 25, 2020. ECF No. 1 at 12 ¶¶ 41-42. Santana asserts that Warden Walker and Commissioner Quiros were "placed on notice." *Id.* ¶¶ 41-42.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged

constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A government or prison official is not personally involved in a constitutional violation simply because he or she was the supervisor of other defendants who may have violated the plaintiff's constitutional rights. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) ("[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant").

"[T]there is no special rule for supervisory liability, … [t]he violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Therefore, to demonstrate personal involvement under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo*, 770 F.3d at 116.

There are no allegations that either defendant Walker or Quiros was directly involved in responding to Santana's requests, grievances or grievance appeals. Nor does Santana allege that either defendant was directly involved in the imposition of the allegedly unconstitutional conditions of his confinement. Accordingly, the Eighth Amendment claims, as asserted against Commissioner Quiros and Warden Walker in their individual capacities, are dismissed. *See* 28 U.S.C. § 1915A(b)(1). The court will permit these claims to proceed against Warden Walker and Commissioner Quiros to the extent that Santana seeks prospective injunctive relief to correct the unconstitutional conditions. *See* Compl. at 15.

**Visitation**

Santana also alleges that on July 28, 2020, he informed Warden Butricks that he would like the opportunity to visit with his mother and father.  Compl. at 10 ¶ 22; at 20-21, Ex. A. Santana acknowledged that visitation privileges with family members had been suspended due to the COVID-19 pandemic and requested that he be permitted to visit with his parents after the COVID-19 restrictions were no longer in effect.  *Id.* at 20-21.

To the extent that Santana intended to assert an Eighth Amendment claim regarding the suspension of family member visitation due to COVID-19, a temporary limitation on an inmate's visitation privileges due to a legitimate prison goal such as safety or security does not state a claim of a substantial deprivation of a basic human need.  *See, e.g.*, *Overton v. Bazzetta,* 539 U.S. 126, 136-37 (2003) (withdrawal of visitation privileges for two-year period as a regular means of effecting prison discipline did not constitute a "dramatic departure from accepted standards for conditions of confinement" or "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety" or "involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur") (citations omitted); *Marrero v. Weir*, No. 3:13-CV-0028 RNC, 2014 WL 4799228, at *3 (D. Conn. Sept. 26, 2014) (concluding that claim of "indefinite withholding of his phone privileges and visitation with his mother" did not state claim of a "deprivation that is sufficiently serious to support a claim under the Eighth Amendment, such as the unnecessary and wanton infliction of pain or deprivations denying the minimal civilized measures of life's necessities") (internal quotation marks and citations omitted) (collecting cases).  Accordingly, the Eighth Amendment claim premised on the suspension of Santana's visitation privileges with his mother and father due to COVID-19 is dismissed.  *See* 28

U.S.C. § 1915A(b)(1).

**Fourteenth Amendment Claim – Procedural Due Process**

Santana alleges that Defendants Peterson, Butricks and Doe/Rodriguez either failed to respond to his Inmate Request or improperly denied or rejected his Level 1 grievance or Level 2 appeal of his conditions of confinement claims. Compl. at 10-12 ¶¶ 26-40. He suggests that the failure to properly process or respond to his request, grievance and grievance appeal violated his Fourteenth Amendment right to procedural due process. *Id.* at 13 ¶ 48.

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures' ") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). As Santana has no constitutionally protected right to grievances procedures, his allegations in this regard fail to state a plausible violation of his right to due process under the Fourteenth Amendment. The Fourteenth Amendment procedural due process claim is therefore dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment Claim – Substantive Due Process**

To state a claim that an official's conduct violated substantive due process under the Fourteenth Amendment, a plaintiff must allege that a government official deprived him or her of a fundamental right and that the conduct of the official in doing so "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd v.*

*Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (internal quotation marks and citation omitted). Conduct that is merely "incorrect or ill-advised" does not constitute conduct that may form the basis of a substantive due process claim. *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d. Cir. 1994) (internal quotation marks and citations omitted).

Santana alleges that the inadequate out-of-cell exercise time and extensive in-cell isolation (or refusal to correct same by Defendants Butricks, Peterson and Walker) violated his right to due process under the Fourteenth Amendment. Compl. at 13 ¶ 48. These allegations do not meet the conscience-shocking conduct necessary to state a substantive due process claim. *See Sandin v. Connor*, 515 U.S. 472, 479 n.4 (1995) (identifying only two examples of conditions that would be shocking enough to violate a prisoner's right to substantive due process: a prison official's involuntary transfer of an inmate to a mental health hospital and a prison doctor's involuntary administration of psychotropic drugs to an inmate"); *Lombardi v. Whitman,* 485 F.3d 73, 81 (2d Cir. 2007) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity.") (internal quotation marks and alteration omitted).

Furthermore, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 272–73 (1994). As previously discussed, the Eighth Amendment addresses the restrictive or harsh conditions to which Santana was subjected during his confinement in South Block 1 unit from July 2020 to November 2020. *See, e.g., Toussaint v.*

*Guadarama*, No. 3:21CV32 (MPS), 2021 WL 1648648, at *6 (D. Conn. Apr. 27, 2021)

("Because the Cruel and Unusual Punishment Clause of the Eighth Amendment provides

protection against inhumane conditions of confinement, the Court has analyzed the plaintiff's

claims regarding the dangerous conditions of confinement to which the defendants exposed him

at Osborn in September, October, and November 2020 under the Eighth Amendment rather than

the Fourteenth Amendment's Due Process Clause.") (citing *United States v. Lanier*, 520 U.S.

259, 272 n.7 (1997)).  Accordingly, the Fourteenth Amendment substantive due process claim

asserted against Wardens Butricks and Walker and Deputy Warden Peterson is dismissed.  *See*

28 U.S.C. § 1915A(b)(1).

### Fourteenth Amendment Claim – Equal Protection

Santana next asserts that inmates at Cheshire who are confined in the TRUE unit and

inmates at MacDougall-Walker who have been convicted of the same offense for which he was

convicted and who have more serious or extensive disciplinary histories have been permitted

longer recreation and/or exercise periods.  He states that this disparate treatment violates the

Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall

"deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV. It does not mandate identical treatment for each individual or group of individuals. Instead,

it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne

Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state a plausible equal protection claim, a plaintiff must allege facts showing that: (1)

he was treated differently from similarly situated individuals and (2) that the difference in or

discriminatory treatment was based on " 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  Santana has not alleged that the defendants treated him differently or discriminated against him because of his membership in a protected class or based on some suspect classification or other impermissible basis.

Absent allegations to support "class-based" discrimination, a plaintiff may state a violation of the Equal Protection Clause under the "class of one" theory.  To state a valid class-of-one claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the Second Circuit, a plausible class of one claim requires a class-of-one plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

Santana alleges that all inmates in the South Block 1 unit were denied recreational and exercise opportunities.  Thus, he has not alleged that the defendants singled him out for differential treatment.  The Fourteenth Amendment equal protection claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

**Remaining Request for Injunctive Relief**

In the July 29, 2020 Inmate Request addressed to Warden Butricks, Santana stated that correctional officers at Cheshire had intentionally caused a staff shortage that led to a lockdown the previous weekend during which his recreation period on Saturday was limited to one hour

and his recreational activities on Sunday consisted only of the opportunity to take a shower. Compl. at 8 ¶ 16; Ex. A, ECF No. 1, at 21. Santana includes as a request for injunctive relief, an order directing the defendants to refrain from using lockdowns and staff shortages as a reason to deprive him of the opportunity to engage in physical exercise and recreational activities. *Id.* at 16.

Santana asserts no facts to suggest that the lockdown that occurred on one weekend in late July 2020, resulting in a partial suspension of recreational and exercise periods, constituted a substantial risk of harm to his mental or physical health. Nor do the facts alleged state a plausible claim that any named defendant was personally responsible for this lockdown. Indeed, he identifies unnamed "officers" as the culprits. Accordingly, to the extent that Santana seeks to assert an Eighth Amendment claim based on the partial and temporary suspension of recreational and exercise activities during this singular lockdown, the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Motion for Preliminary Injunction [ECF No. 10][4]**

Santana contends that in March 2021, prison officials at Cheshire implemented a new recreation schedule. Under the new schedule officials "allotted [him] two 1 ½ hour recreation/leisure periods a day." Mot. Prelim. Inj. at 8. He states that on March 14, 2021, March 21, 2021, April 4, 2021, April 8, 2021, April 9, 2021, April 10, 2021 and April 12, 2021, prison officials placed his housing unit on lockdown during first shift. *Id.* at 5. Consequently, he was only permitted to engage in one 1 ½ hour period of recreation/leisure activities during second shift on those days. *Id.* On March 25, 2021, prison officials placed his housing unit on

---

[4]Previously, the Court indicated that the propriety of preliminary injunctive relief would be taken up after the defendants had an opportunity to respond to the motion. *See,* ECF No. 11. However, insofar as the Court

lockdown during both first and second shifts.  *Id.*  Santana seeks an interim order directing

defendants Walker, Peterson, Quiros and Doe/Rodriguez to permit him at least four hours of out-

of-cell activities every day.  *Id.* at 1-2, 5-6.

An injunction is a drastic and extraordinary remedy, which should not be granted as a

matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation

omitted).  To warrant preliminary injunctive relief, the moving party must demonstrate (a) that

he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a

"likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of

the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly

toward the party requesting preliminary injunctive relief."  *Cacchillo v. Insmed, Inc.*, 638 F.3d

401, 405-06 (2d Cir. 2011) (internal quotation marks omitted).  If a party seeks a permanent

injunction, he or she "must demonstrate (1) irreparable harm ... and (2) actual success on the

merits."  *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012).  Thus, the standard for

a permanent injunction is similar to the standard for a preliminary injunction, but a plaintiff must

show actual success rather than a likelihood of success.  *See Amoco Prod. Co. v. Vill. of*

*Gambell*, 480 U.S. 531, 546 n.12 (1987).

Fatal to this motion is the fact that the conduct giving rise to the request for preliminary

injunctive relief occurred after the instant complaint was filed. Accordingly, these allegations are

not related to the allegations underlying the Eighth Amendment claims to be adjudicated.

Because Santana must demonstrate actual success on the merits of the Eighth Amendment claims

against the defendants to obtain injunctive relief, the relief requested in the motion for

preliminary injunction must relate to the allegations asserted in support of that claim.  *See, e.g.,*

*Purugganan v. AFC Franchising, LLC*, No. 3:20-CV-00360 (KAD), 2021 WL 268884, at \*1–3 (D. Conn. Jan. 27, 2021) ("Success on the merits necessarily refers to the merits of the underlying claims. Accordingly, the Court cannot enjoin AFC based upon alleged conduct that falls outside the scope of the dispute framed by the operative complaint."). The operative Eighth Amendment claims are not based on lockdowns imposed by the defendants on Santana and other inmates in Santana's housing unit. Rather, the operative Eight Amendment claims stem from the deprivation of adequate out-of-cell activities and the extensive in-cell isolation from July 2020 through November 2020. Because the allegations regarding lockdowns that occurred in March and April 2021 due to alleged staff shortages are unrelated to the Eighth Amendment claims asserted in the complaint, the motion seeking a preliminary injunction is denied. *See, e.g.*, *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Stewart v. INS*, 762 F.2d 193, 198 (2d Cir. 1985) (holding district court lacked jurisdiction over motion for injunctive relief relating to conduct not alleged in plaintiff's complaint); *Torres v. UConn Health*, No. 3:17-cv-00325 (SRU), 2017 WL 3713521, at \*2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim asserted in motion was unrelated to underlying claims in complaint); *Lebron v. Armstrong*, 289 F. Supp. 2d 56, 61 (D. Conn. 2003) (denying inmate's request for injunctive relief because, *inter alia*, it was based on allegations that were different and unrelated to the facts pled in the underlying complaint).[5]

---

[5] Simply because the Plaintiff has litigation pending before this Court, does not serve to immerse this Court in the day to day decisions of the Department of Correction regarding his incarceration. This Court cannot and

**ORDERS**

In accordance with the foregoing analysis, the court enters the following orders:

**(1)**     The Clerk is directed to revise the docket to reflect the correct spelling of Defendant Denise Walker's first name and Defendant Jennifer Peterson's last name. The Motion for Preliminary Injunction, [**ECF No. 10**], is **DENIED**.

The following claims asserted in the Complaint, [**ECF No. 1**] are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1):  any claims asserted by Santana on behalf of other inmates; the Fourteenth Amendment equal protection claim; the Fourteenth Amendment procedural and substantive due process claims, the Eighth Amendment visitation claim, the Eighth Amendment claim related to a lockdown that occurred during the last weekend of July 2020; the Eighth Amendment claim related to conditions involving exercise, indoor recreational activities and cell confinement asserted against Commissioner Quiros and Warden Walker in their individual capacities; and all requests for declaratory relief.  Any claims seeking compensatory and punitive damages for violations of Santana's federal constitutional rights by the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

The Eighth Amendment claims against Defendants Butricks, Peterson and Doe/Rodriguez arising out of the alleged inadequate out-of-cell exercise and the extended in-cell isolation will **PROCEED** against these defendants in their individual capacities and against Defendants Quiros, Walker, Peterson and Doe/Rodriguez in their official capacities to the extent that Santana seeks prospective injunctive relief.

---

will not oversee such day to day operations. Indeed, the Supreme Court has cautioned against the judiciary taking on any such role. See Bell v. Wolfish, 441 U.S. 520, 54748, 99 S. Ct. 1861, 187879, 60 L. Ed. 2d 447 (1979). See also, Fisher v. Goord, 981 F. Supp. 140, 16768 (W.D.N.Y. 1997)(In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state

(2)     On or before **June 16, 2021,** the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint, and a copy of this order on Commissioner Angel Quiros, Warden Denise Walker, Deputy Warden Jennifer Peterson and District Administrator Nick Rodriguez in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

(3)     On or before **June 16, 2021,** the Clerk shall verify the current work addresses of Warden Kenneth Butricks, Deputy Warden Jennifer Peterson and District Administrator Nick Rodriguez and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants Butricks, Quiros, Walker, Peterson and Rodriguez shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to defendants Butricks, Peterson and Rodriguez.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **November 26, 2021.** Discovery requests need not be filed with the court.

(6)      All motions for summary judgment shall be filed by December 26, 2021.

(7)      If Santana changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Santana should write PLEASE NOTE MY NEW ADDRESS on the notice. If Santana has more than one pending case, he should indicate all case numbers in the notification of change of address. Santana should also inform the attorney for the defendants of his new address.

(8)      Santana shall utilize the Prisoner Efiling Program when filing documents with the court. Santana is advised that the Program may be used only to file documents with the court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the court. Therefore, discovery requests must be served on defendants' counsel by regular mail.

(9)      The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

(10)    The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Bridgeport, Connecticut this 26th day of May 2021.


_____/s/_____
Kari A. Dooley
United States District Judge