# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS A. SANTANA, JR., | ) | 3:21-CV-376 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANGEL QUIROS, KENNETH | ) | |
| BUTRICKS, DENISE WALKER, | ) | November 4, 2022 |
| JENNIFER REIS,[1] NICK RODRIGUEZ, | ) | |
| *Defendants*. | ) | |

## RULING AND ORDER ON PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Sarala V. Nagala, United States District Judge.

Plaintiff Luis Santana, Jr., currently incarcerated at Cheshire Correctional Institution ("Cheshire"), brought a *pro se* complaint against Defendants, certain officials at the Connecticut Department of Correction ("DOC") alleging, among other things, that Defendants have violated his constitutional rights by restricting the amount of time he is allowed out of his cell. Following an initial review of the complaint, Plaintiff was permitted to proceed on his claim that Defendants have violated and continue to violate the Eighth Amendment by significantly restricting the amount of time Plaintiff is permitted to engage in out-of-cell activities, such as meal time, leisure and recreation, and exercise.

In the present motion, Plaintiff, through recently appointed *pro bono* counsel, seeks to amend his complaint to allege more detailed facts, raise additional related claims and legal theories, and join additional DOC officials as Defendants. For their part, Defendants oppose the motion to amend the complaint on the ground that the new claims, as well as all claims against the new

---

[1] Née Peterson. The Clerk is directed to amend the case caption to reflect the change in Jennifer Reis' name. To be consistent with the parties' briefs, however, and to avoid confusion, the Court will refer to her as Reis throughout this opinion.

Defendants, are futile.  The Court GRANTS in part and DENIES in part Plaintiff's motion to amend, as set forth in more detail below.

## I.     FACTUAL BACKGROUND

### A.   The Original Complaint

Plaintiff's original complaint, filed in March of 2021, generally sets forth the following allegations.  Plaintiff has been housed in Cheshire, a Level 4 prison facility, since 2012.  Compl., ECF No. 1, ¶¶ 1, 8.  *See also* Initial Review Order ("IRO"), ECF No. 12, at 2; *Santana v. Quiros*, No. 3:21-CV-376 (KAD), 2021 WL 2138772, at *2 (D. Conn. May 26, 2021).  Plaintiff initially named the following Defendants: Angel Quiros, the Commissioner of the DOC, Compl. ¶ 2; Denise Walker, the Warden of Cheshire between 2020 and the date the complaint was filed, *id.* ¶ 4; Kenneth Butricks, the Warden of Cheshire from 2019 to 2020, *id.* ¶ 3; Jennifer Reis (née Peterson, *see* note 1), the Deputy Warden of Cheshire as of the date the complaint was filed, *id.* ¶ 5; and John or Jane Doe, later identified as Nick Rodriguez, the District Administrator, *id.* ¶ 6.

On July 29, 2020, Plaintiff sent an inmate request to Butricks, then the Warden of Cheshire, contending that he suffered cruel and unusual punishment due to the conditions of his confinement, specifically, the limited amount of time he was permitted out of his cell.  *Id.* ¶ 9; Ex. A to Compl., ECF No. 1 at 18.  Plaintiff contended that his out-of-cell time was limited to: two hours each day for out-of-cell indoor recreational activities, including showers and phone calls; fifteen to twenty minutes, twice per day, to eat lunch and dinner with other inmates; and two hours each week for out-of-cell physical exercise.  Compl. ¶¶ 13–14.  Plaintiff further contended that correctional officers at Cheshire "intentionally created a staff shortage," which resulted in frequent lockdowns, further limiting his out-of-cell time.  *Id.* ¶¶ 16–17.  Plaintiff stated that "deprivation of sufficient recreation and leisure time could cause severe psychiatric harm," and constituted cruel and unusual

punishment.  *Id.* ¶¶ 15, 17.  He also proposed certain additional recreation, outdoor, and programming activities to attempt an informal resolution.  *Id.* ¶¶ 20–22.  Butricks retired without responding to this request.  *Id.* ¶ 10. Walker then became the Warden of Cheshire.  *Id.* ¶ 41.

On August 18, 2020, Plaintiff filed a grievance regarding Butricks' failure to respond and the limited out-of-cell time.  *Id.* ¶ 23; Ex. A to Compl., ECF No. 1 at 22–23.  On September 28, 2020, Reis, then the Deputy Warden of Cheshire, denied the grievance, reasoning that Plaintiff was provided adequate opportunities for out-of-cell and outdoor recreation.  Compl. ¶¶ 26, 28; ECF No. 1 at 22.  On September 30, 2020, Plaintiff filed a Level 2 grievance, appealing Reis' denial of his Level 1 grievance.  *Id.* ¶ 32; Ex. B to Compl., ECF No. 1 at 25.  On November 12, 2020, Rodriguez, the District Administrator, rejected Plaintiff's Level 2 grievance, reasoning that it was filed improperly pursuant to Administrative Directive 9.6 and stating that the grievance did not qualify for Level 3 review.  *Id.* ¶¶ 33–34; Ex. C to Compl., ECF No. 1 at 31.  On November 25, 2020, Plaintiff nonetheless filed a Level 3 grievance appealing Rodriguez's denial of his Level 2 grievance, but it was returned without response, in accordance with Rodriguez's prior conclusion that the grievance did not qualify for Level 3 review.  *Santana*, 2021 WL 2138772, at *3; Compl. ¶¶ 38, 40.

## B.  Procedural History

On March 17, 2021, based on the allegations set forth above, Plaintiff filed the original complaint in the present action, claiming that Defendants violated his Eighth Amendment right to be free of cruel and usual punishment, his Fourteenth Amendment right to due process, and his Fourteenth Amendment right to equal protection of the law.  *Santana*, 2021 WL 2138772, at *3. After dismissing certain claims pursuant to 28 U.S.C. § 1915A, the Court (Dooley, J.), permitted two Eighth Amendment claims to proceed on a theory of "inadequate out-of-cell exercise and the

extended in-cell isolation": one against Butricks, Reis, and Rodriguez in their individual capacities for monetary damages, and one against Quiros and Walker in their official capacities for prospective injunctive relief. *Id.* at *10.

In January of 2022, after the case was transferred to the undersigned, the Court granted Plaintiff's motion to appoint *pro bono* counsel. ECF No. 39. In particular, the Court noted that the Second Circuit has held that the question of whether certain time spent in-cell constitutes solitary confinement, triggering certain Eighth Amendment considerations, implicates triable issues of fact. *See Reynolds v. Quiros*, 990 F.3d 286, 294 (2d Cir. 2021). The Court permitted Plaintiff to, after conferring with *pro bono* counsel, file a motion to amend the complaint, which is the motion presently before the Court.[2] ECF No. 49.

### C. The Proposed First Amended Complaint

Plaintiff's proposed First Amended Complaint ("FAC"), ECF No. 52, attempts to state claims against four additional Defendants not previously named in the original complaint: Scott Erfe, the Warden of Cheshire from 2015 to 2019, in his individual capacity *id.* ¶ 16; Timothy Farrell Sr., the Warden of Cheshire from 2014 to 2015, in his individual capacity, *id.* ¶ 17; Jon Brighthaupt, the Warden of Cheshire from 2011 to 2014, in his individual capacity, *id.* ¶ 18; and Sean Howard, a correctional officer at Cheshire who is also the President of AFSCME Local 387, a union involving correctional officers at Cheshire, in his official and individual capacities, *id.* ¶¶ 19, 36. Additionally, Plaintiff seeks conversion of the capacity in which he sues Walker (from official capacity to individual capacity), revision of the capacity in which he sues Defendant

---

[2] Prior to the appointment of *pro bono* counsel, Plaintiff had previously sought to amend his complaint. ECF Nos. 23, 35, 36. After appointing *pro bono* counsel and ordering that counsel could file a motion to amend the complaint, the Court denied Plaintiff's earlier motions as moot. *See* ECF Nos. 40, 41, 42.

Rodriguez (from both individual and official capacities to official capacity only), and alteration in his identification of Reis' position, as she was named the Warden at Cheshire in 2021.

By naming Farrell, Erfe, Butricks, Walker, and Reis as Defendants, Plaintiff alleges constitutional violations committed by the Wardens of Cheshire since he was transferred there in 2012. His complaint details the changes in out-of-cell time from one Warden to the next, which are largely consistent with the original complaint. *Id.* ¶¶ 23–28. Throughout this entire time period, Plaintiff's FAC alleges, Cheshire imposed "frequent and unpredictable" lockdowns, which imposed further restrictions on the already limited amount of time during which inmates were permitted to pursue out-of-cell activities. *Id.* ¶ 24. Because those lockdowns often overlapped with scheduled out-of-cell recreation time and meal breaks, Plaintiff lost much of that time due to the lockdowns, in which case he had to eat meals in his cell, within feet of his toilet. *Id.* ¶¶ 4, 26, 31.

Although lockdowns are meant to be an "emergency response," *id.* ¶ 34, Plaintiff alleges that all Defendants abused their power to impose lockdowns for unconstitutional ends, such as depriving inmates of out-of-cell time. For example, Plaintiff alleges that, during Erfe's tenure as Warden, there were systematic lockdowns twice per week for "staff training," as well as regular "weekend lockdowns," even without actual training occurring as scheduled and without any emergency situation. *Id.* ¶¶ 26, 35. In addition, Plaintiff alleges that the union, led by Howard, forced Cheshire to impose some of these lockdowns by orchestrating "sickouts" by correctional officers. *Id.* ¶¶ 36, 38. The sickouts, Plaintiff alleges, are "employed to artificially generate staff shortages as leverage for pay raises or to protest legislation aimed at providing prisoners with more time out-of-cell," but they do not satisfy the emergency situation criteria that permit the use of

lockdowns.  *Id.* ¶ 36.  Plaintiff further alleges that out-of-cell time was more severely restricted in 2020 when the COVID-19 pandemic began.  *Id.* ¶ 28.

On June 30, 2021, Governor Lamont issued Executive Order ("EO") 21-1, which "mandates that, absent 'extraordinary circumstances' or disciplinary status, inmates are not to be confined to their cells for 'twenty or more hours per day.'"  *Id.* ¶ 29.  Plaintiff alleges that Cheshire modified the scheduled out-of-cell time in response to EO 21-1, increasing it to precisely four hours each day.  *Id.*  Since the enactment of EO 21-1, however, "lockdowns at Cheshire have been commonplace," depriving Plaintiff of the out-of-cell time required by the order.  *Id.* ¶ 30.

Plaintiff repeats the allegations regarding his pursuit of administrative remedies, generally consistent with the allegations of the original complaint.  *Id.* ¶¶ 40–48.  He further alleges that, as a result of his conditions of confinement, his mental health has "deteriorated."  *Id.* ¶ 52.  Even while this case was pending, Plaintiff wrote an inmate request to Walker, then-Warden of Cheshire, informing her that "isolated confinement has resulted in his memory loss, difficulty concentrating, difficulty controlling his impulses, and increased levels of stress and anxiety," though he never received a response to this request.  *Id.* ¶ 50.  In 2021, he was examined by Cheshire medical staff, who informed him that "he should get more exercise to help with his mental health," which he cannot do when confined in his cell.  *Id.* ¶ 54.

The proposed FAC raises seven claims against Defendants in their official and individual capacities.  Count One claims that all Defendants violated the Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, by imposing continued isolated confinement since 2012, which constitutes cruel and unusual punishment.  *Id.* ¶ 76.  Count Two claims that all Defendants violated Article I, §§ 8, 9, of the Connecticut Constitution by imposing continued isolation and confinement, similar to Count One.  *Id.* ¶ 79.  Count Three claims that all Defendants violated the

Eighth and Fourteenth Amendments, pursuant to § 1983, by arbitrarily punishing Plaintiff since 2012, which constitutes cruel and unusual punishment. *Id.* ¶¶ 84–85. Count Four claims that all Defendants violated Plaintiff's Fourteenth Amendment substantive due process rights, pursuant to § 1983, by imposing an arbitrary punishment. *Id.* ¶ 88. Count Five claims that all Defendants violated Article I, §§ 8, 9, of the Connecticut Constitution by imposing an arbitrary punishment, similar to Counts Three and Four. *Id.* ¶ 91. Count Six claims that all Defendants violated Plaintiff's Fourteenth Amendment procedural due process rights, pursuant to § 1983, by violating EO 21-1, which established a state-created liberty interest. *Id.* ¶¶ 93–94, 100. Count Seven seeks a declaratory judgment, pursuant to Conn. Gen. Stat. § 52-29, that Quiros, Rodriguez, Reis, and Howard are violating EO 21-1. *Id.* ¶ 105. Plaintiff's prayer for relief separates the relief he requests from those Defendants sued in their official capacities, *see id.* at 26, Prayer for Relief, paragraph (a), from the relief he requests from those Defendants sued in their individual capacities, *see id.* at 27, Prayer for Relief, paragraph (b).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2), which governs amendments to a pleading before trial,[3] states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." That Rule further provides that "[t]he court should freely give leave when justice so requires." The addition of a party also implicates Federal Rule of Civil Procedure 21,

---

[3] As the Second Circuit has explained, "[t]he ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). "At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission." *Id.* After that period ends, the plaintiff may amend the complaint only after obtaining the defendant's consent or the leave of the court, pursuant to the liberal and permissive standard of Rule 15(a)(2). If the district court "issues a scheduling order setting a date after which no amendment will be permitted," however, then any request by the plaintiff to amend the complaint is governed by the stricter "good cause" standard set forth in Rule 16(b)(4). *See Sacerdote*, 9 F.4th at 115. Here, because Defendants and the Court anticipated that Plaintiff would file the present motion to amend the complaint through recently appointed *pro bono* counsel, the Court applies the more liberal standard of Rule 15(a)(2).

which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  The standards governing motions to amend under Rule 15 "apply with equal force to motions to add parties under Rule 21."  *Trs. of I.B.E.W. Loc. Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 3:11-CV-709 (CSH), 2013 WL 785333, at *1 (D. Conn. Mar. 1, 2013).

Rule 15(a)(2) "is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, [or] futility."  *Sacerdote*, 9 F.4th at 115 (alteration in original) (citation and internal quotation marks omitted).[4]  The party opposing a motion to amend bears the burden of establishing that amendment would be futile.  *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 164 (E.D.N.Y. 2010).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Accordingly, "a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'"  *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Iqbal*, 556 U.S. at 679).  In addition, leave to amend is particularly favored after a *pro se* plaintiff obtains *pro bono* counsel.  *See DeCarlo v. Fry*, 141 F.3d 56, 62 (2d Cir. 1998) (finding error in district

---

[4] Here, Defendants do not argue that Plaintiff's motion for leave to amend should be denied on the basis of undue delay, bad faith, or dilatory motive.  Therefore, the Court will consider only the legal standard and arguments pertaining to futility.

court's decision not to allow a plaintiff to amend the complaint, "especially after the appointment of *pro bono* counsel").

## III.     DISCUSSION

Defendants raise various arguments in opposition to the new claims and Defendants that Plaintiff seeks to add in the FAC.[5]  Specifically, Defendants contend: that all claims against Brighthaupt, Farrell, and Erfe are time-barred; that Plaintiff failed to exhaust administrative remedies with respect any of the new claims; that Counts One and Three, both of which raise Eighth Amendment claims, are duplicative; that Counts Four and Six, raising due process claims, were dismissed in the Court's IRO; that there is no private right of action to support Counts Two and Five, which purportedly arise under the Connecticut Constitution; that Count Seven, raising a state law declaratory judgment claim, is improperly raised in federal court; and that the retrospective declaratory relief sought in the prayer for relief against Defendants in their official capacities is barred by the Eleventh Amendment.  The Court considers each argument in turn.

### A.  Timeliness

Defendants Brighthaupt, Farrell, and Erfe contend that all claims raised against them are time-barred.  "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.  Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."  *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).  Thus, where a statute of limitations defense would render amendment futile, the defense is properly raised in opposition to a motion to amend a complaint.  *See Trakansook v. Astoria Fed.*

---

[5] Defendants do not ask the Court to deny leave to amend with respect to any of the new factual allegations raised in the FAC; rather, their opposition to the motion to amend the complaint pertains to the legal claims, the newly named Defendants, and the prayer for relief.

*Sav. & Loan Ass'n*, No. 07-2224-CV, 2008 WL 4962990, at *2 (2d Cir. Nov. 21, 2008) (summary order); *Fraser v. Caribe*, No. 3:20-CV-00071 (SVN), 2022 WL 1210720, at *3 (D. Conn. Apr. 25, 2022).

Plaintiff's federal claims arise under § 1983, a federal cause of action which contains no explicit statute of limitations.  "Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994) (citations and internal quotation marks omitted).  Courts in this district generally subject § 1983 claims to the three-year limitation period provided by Connecticut General Statutes § 52-577, which pertains to general tort claims not specifically covered by different limitations provisions. *Lounsbury*, 25 F.3d at 134.  Accordingly, Plaintiff's § 1983 claims against Farrell, Brighthaupt, and Erfe, as well as his state law claims against those Defendants, are subject to the three-year limitation period provided by § 52-577.[6]

Plaintiff filed the present motion for leave to amend on April 11, 2022, ECF No. 49, presumably rendering time-barred any claims arising prior to April 11, 2019.  As noted above, Brighthaupt's tenure as Warden ended in 2014, and Farrell's tenure as Warden ended in 2015, well outside the three-year limitation period.  FAC ¶¶ 17–18.  Erfe's tenure as Warden ended on March 31, 2019, just outside the three-year limitation period.  Miller Decl., ECF No. 54-2 ¶ 4.  Plaintiff, however, contends that an executive order tolled the limitation period with respect to the claims

---

[6] With respect to Plaintiff's state law claims against Brighthaupt, Farrell, and Erfe, the three-year limitation period "runs from the date of the act or omission complained of." *Stuart & Sons, L.P. v. Curtis Pub. Co.*, 456 F. Supp. 2d 336, 343 (D. Conn. 2006) (quoting *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212 (1988), for the proposition that § 52-577 is "an occurrence, as opposed to an accrual, statute").  With respect to Plaintiff's § 1983 claims against these Defendants, federal law, rather than state law, governs the date of accrual.  *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980).  Under federal law, the three-year limitation period begins to run at "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (citation and internal quotation marks omitted).  Although the Court notes these differing standards, the particular date triggering the limitation period does not appear to be central to the timeliness issue in this case.

against Erfe, and that the Court should equitably toll the limitation period with respect to the claims against Brighthaupt and Farrell.

### 1. Erfe

The Court finds persuasive Plaintiff's argument that his claims against Erfe are timely filed. On March 19, 2020, Governor Lamont suspended Connecticut statutes of limitations between March 19, 2020, and March 1, 2021, in response to the COVID-19 pandemic. *See* Executive Order No. 7G (March 19, 2020), CT.GOV, https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7G.pdf ("EO 7G"); Executive Order No. 10A (February 8, 2021), CT.GOV, https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-10A.pdf ("EO 10A").[7] Specifically, EO 7G tolled all statutes of limitations contained in Chapter 926 of the Connecticut General Statutes, which contains § 52-577.

Courts in the U.S. District Court for the District of Connecticut and the Connecticut Superior Court have held that EO 7G "served to 'interrupt' or 'pause' any statute of limitation that would have otherwise been running during the applicable period." *Taylor v. Pillai*, No. 3:21-CV-00623 (SALM), 2022 WL 4080525, at *4, *6 (D. Conn. Sept. 6, 2022) (collecting cases and holding that EO 7G suspended the relevant statute of limitation); *see also Capua v. Hill*, No. HHD-CV-216140492S, 2021 WL 4906017, at *3 (Conn. Super. Ct. Sept. 24, 2021) (holding that EO 7G interrupted the running of the relevant statute of limitation). In addition, at least one case in this district has held that EO 7G properly tolled § 52-577 as applied to § 1983 claims, and that the

---

[7] The Court takes judicial notice of Governor Lamont's Executive Orders, available on the State of Connecticut website. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Connelly v. Komm*, No. 3:20-CV-1060 (JCH), 2021 WL 5359738, at *3 n.3 (D. Conn. Nov. 16, 2021) (taking judicial notice of EOs 7G and 10A).

application of EO 7G would not defeat the goals of § 1983.  *Connelly v. Komm*, No. 3:20-CV-1060 (JCH), 2021 WL 5359738, at *4-5 (D. Conn. Nov. 16, 2021).

Here, Erfe contends that his tenure as Warden ended on March 29, 2019, Miller Decl., ECF No. 54-2 ¶ 4, rendering time-barred any claims brought after March 29, 2022.  Although the original complaint was filed before that date, the present motion to amend the complaint was filed after that date.  EO 7G, however, suspended the limitation period on the effective date of that order, March 19, 2020, at which point Plaintiff still had two years and ten days left in the limitation period with respect to his claims against Erfe.  Thus, when the limitation period resumed on March 1, 2021, Plaintiff still had two years and ten days left to bring his claims against Erfe.  His claims against Erfe first asserted on April 11, 2022, about one year and six weeks later, are therefore timely.[8]  *See Connelly*, 2021 WL 5359738, at *5 (denying motion to dismiss and concluding that the plaintiff's § 1983 claims were timely pursuant to § 52-577 and EO 7G).  Accordingly, the claims of the proposed FAC against Erfe are not futile on timeliness grounds, and the Court grants leave to amend with respect to the claims against Erfe, except as provided below with respect to Counts Two, Four, and Five.

### 2. Brighthaupt and Farrell

The Court is not convinced, however, that Plaintiff's claims against Brighthaupt and Farrell are timely.  As noted above, Brighthaupt's tenure as Warden ended in 2014, and Farrell's tenure as Warden ended in 2015, well outside the three-year limitation period, and outside the scope of EO 7G's suspension of the limitation period.  FAC ¶¶ 17–18.  For his part, Plaintiff urges the Court to equitably toll the limitation period.  "[E]quitable tolling pauses the running of, or 'tolls,' a statute

---

[8] Given that EO 7G suspended the limitation period for enough time to render Plaintiff's claims against Erfe timely, the Court need not consider Erfe's contention that Plaintiff's claims against him are untimely because they do not relate back to the date the original complaint was filed pursuant to Federal Rule of Civil Procedure 15(c).

of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

As a preliminary matter, § 52-577 is generally not subject to the doctrine of equitable tolling, even when applied to a § 1983 claim, as it has been labeled a "statute of repose," which stands in contrast to a statute of limitations and "sets a fixed limit after which the tortfeasor will not be held liable." *Carter v. Univ. of Conn.*, No. 3:04-CV-1625 (SRU), 2006 WL 2130730, at *3 (D. Conn. July 28, 2006) (citing cases in which the Connecticut Appellate Court held that it lacked authority to equitably toll a statute of limitation when the statute has been labeled a "statute of repose"), *aff'd*, 264 F. App'x 111 (2d Cir. 2008).  Even if the Court could equitably toll the limitation period, however, the FAC does not plausibly allege that equitable tolling is warranted here.  Although the Court is sympathetic to Plaintiff's deteriorating mental health due to his prolonged confinement, such generalized and prolonged alleged symptoms are not the type of "extraordinary circumstances beyond his control" that caused him to miss the original filing deadline, such that equitable tolling is warranted.  *See Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (finding that a ninety-eight-day period of hospitalization equitably tolled the statute of limitation for a federal habeas petition); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 76 (2d Cir. 2001) (refusing to equitably toll period of twenty-two days habeas petitioner spent in solitary confinement at the beginning of a limitation period).  Nor has Plaintiff demonstrated that he acted with "reasonable diligence" throughout the lengthy period he seeks to toll.  *Harper*, 648 F.3d at 138.

Although Plaintiff attempts to analogize his allegations of mental distress to this Court's ruling in another case, *Rivera v. Erfe*, No. 3:21-CV-316 (SVN), 2022 WL 1205203, at *5 (D. Conn. Apr. 22, 2022), the facts and procedural posture of that case were much narrower. There, the plaintiff dated and signed his complaint within the limitation period, but he could not file it until two months later because he contracted COVID-19, experienced severe symptoms, and was subject to quarantines.[9] *Id.* at *1–3. Here, not only does equitable tolling appear not to apply to § 52-577, but Plaintiff also fails to allege circumstances to plausibly support a claim of equitable tolling for the period of several years he seeks to have tolled. Thus, Plaintiff's untimely claims against Brighthaupt and Farrell are futile, and the Court denies his motion to amend the complaint insofar as it seeks to state claims against and join Brighthaupt and Farrell.

## B. Exhaustion of Federal Claims

Defendants next contend that the FAC is futile because it lacks allegations that Plaintiff properly exhausted his new claims. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As a preliminary matter, the PLRA's exhaustion requirement applies only to federal claims, so any failure to exhaust his state law claims would not render those claims futile. *See Alston v. Daniels*, No. 3:15-CV-669 (CSH), 2015 WL 7257896, at *10 (D. Conn. Nov. 17, 2015) (noting that the PLRA's exhaustion requirement "does not apply to state law claims"); *Nunez v. Goord*, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) ("As [the plaintiff's] cause of action alleging negligence does

---

[9] Moreover, when the defendants in *Rivera* sought to dismiss the complaint on timeliness grounds, they argued that the plaintiff was not entitled to equitable tolling on the merits and failed to note that the three-year limitation period contained in § 52-577 generally cannot be equitably tolled.

14

not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement.").

With respect to the FAC's federal claims—Counts One, Three, Four, and Six, dating from Erfe's tenure as Warden to the present—the Court declines to find those claims futile on exhaustion grounds at this stage of the case.  As the U.S. Supreme Court has explained, "failure to exhaust is an affirmative defense under the PLRA," and plaintiffs generally "are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."  *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citing *Jones*, 549 U.S. at 215).  *See also Toussaint v. Guadarama*, No. 3:21-CV-32 (MPS), 2022 WL 19337, at *4 (D. Conn. Jan. 3, 2022) ("Nevertheless, a defendant may move for dismissal if the failure to exhaust administrative remedies under the prison grievance program is clear from the face of the complaint."); *Torrence v. Pesanti*, 239 F. Supp. 2d 230, 232 (D. Conn. 2003) ("[T]he failure to exhaust administrative remedies under the PLRA is an affirmative defense that defendants must plead, unless the failure to exhaust is readily apparent or unambiguously established from the face of the record.").

Here, it is not clear from the face of the proposed FAC that Plaintiff failed to exhaust his available administrative remedies.  Rather, the original complaint and the proposed FAC allege that Plaintiff filed an informal inmate request, a Level 1 grievance, a Level 2 grievance, and a Level 3 grievance arising from the limited amount of time spent out of his cell for leisure, recreation, and meal time.  In arguing that Plaintiff's federal claims are futile, Defendants do not dispute that these allegations plausibly establish exhaustion of Plaintiff's claims on the theory that

Butricks, Walker, and Rodriguez denied him the proper out-of-cell time.  ECF No. 54-1 at 20–21. Rather, they contend that Plaintiff's administrative grievances regarding inadequate out-of-cell time did not specifically concern the allegations raised in the FAC that correctional officers deliberately orchestrated improper lockdowns to further restrict Plaintiff's already limited out-of-cell time or EO 21-1, as it had not been passed at the time the grievances were filed.  They further contend that, because Administrative Directive 9.6 requires the filing of a grievance within thirty days of the occurrence or discovery of the cause of the grievance, Plaintiff's Level 1 grievance filed on August 18, 2020, is both untimely as to events occurring more than thirty days before its filing and insufficient to cover any events that occurred after it was filed.

The questions of what Plaintiff's administrative grievances did or did not encompass, and what they were required to encompass in order to proceed with a suit in federal court, however, is not properly resolved at the pleading stage.  Plaintiff has plausibly alleged that he exhausted the administrative remedies available to him, and Defendants will have every opportunity to pursue to their exhaustion defense at the summary judgment stage.  *See Mateo v. O'Connor*, No. 08 Civ. 11053 (RJH) (DCF), 2010 WL 3199690, at *2 (S.D.N.Y. Aug. 12, 2010) (recognizing that exhaustion of administrative remedies is "often a matter best left for resolution at the summary judgment stage").  Accordingly, leave to amend will not be denied on the ground of failure to exhaust.

### C.  Counts One and Three Under the Eighth Amendment

Defendants also argue that Count One, which claims that the conditions of Plaintiff's confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, is duplicative of Count Three, which claims that the conditions of Plaintiff's confinement constitute arbitrary punishment in violation of the Eighth Amendment.  ECF No. 54-1 at 27–28.  For his part,

Plaintiff contends that Count One represents the original claim permitted to proceed pursuant to the Court's IRO, whereas Count Three represents a novel legal theory that arbitrary punishment violates the Eighth Amendment.  ECF No. 56 at 6.  Plaintiff represents that the Eighth Amendment prohibits the arbitrary imposition of the death penalty and contends that, similarly, the Eighth Amendment prohibits Defendants' arbitrary restriction of out-of-cell time.  *Id.* (citing *Gregg v. Georgia*, 428 U.S. 153, 162 (1976)).  *But see Gregg*, 428 U.S. at 188 (citing *Furman v. Georgia*, 408 U.S. 238, 313 (1972), for the proposition that "the penalty of death is different in kind from any other punishment imposed under our system of criminal justice").  Plaintiff recognizes that this claim is "novel."  ECF No. 56 at 5.

As Second Circuit has explained, dismissal is "especially disfavored" when "the complaint sets forth a novel legal theory that can best be assessed after" further factual and legal development.  *See Baker v. Cuomo*, 58 F.3d 814, 818–19 (2d Cir. 1995), *vacated in part on other grounds sub nom. Baker v. Pataki*, 85 F.3d 919 (2d Cir. 1996) (en banc); *Hoehl Fam. Found. v. Roberts*, No. 5:19-CV-229 (GWC), 2020 WL 10790035, at *19 (D. Vt. Oct. 15, 2020) (same).  Construing the allegations of the complaint in Plaintiff's favor, as is proper at this stage of the case, Plaintiff has plausibly raised a novel legal claim in Count Three under the Eighth Amendment that is distinct from the Eighth Amendment claim raised in Count One.  Because the futility or merit of this novel claim will be best assessed after further factual development and substantive briefing, the Court grants leave to amend with respect to Counts One and Three.

### D.  Counts Four and Six Under the Fourteenth Amendment

Defendants contend that Counts Four and Six of the FAC, raising due process claims under the Fourteenth Amendment, are futile.  Their arguments on this issue, however, are somewhat unclear.  Specifically, in arguing that Plaintiff fails to state a plausible substantive due process

claim, which is raised in Count Four, Defendants refer to paragraphs 92–100 of the FAC; those paragraphs, however, pertain to Count Six, which raises a procedural due process claim, governed by a different standard.  Accordingly, the Court will attempt to direct Defendants' arguments to the corresponding claims.

The Due Process Clause of the Fourteenth Amendment "has been interpreted as a 'protection of the individual against arbitrary action of government.'"  *Lombardi v. Whitman*, 485 F.3d 73, 78–79 (2d Cir. 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). It has two components: procedural and substantive.  *Id.*  In essence, a procedural due process claim contends that a liberty interest cannot be deprived without the procedural fairness guaranteed by the Due Process Clause, whereas a substantive due process claim contends that the liberty interest cannot be deprived no matter what procedures attended the deprivation.  *See Lewis*, 523 U.S. at 856 (Kennedy, J., concurring) ("It can no longer be controverted that due process has a substantive component. . . . As a consequence, certain actions are prohibited no matter what procedures attend them."); *Swarthout v. Cooke*, 262 U.S. 216, 220 (2011) (considering a procedural due process claim and noting that the Due Process Clause "requires fair procedures" to vindicate a constitutionally protected liberty interest).  As discussed below, the standards governing a substantive and procedural due process claim differ.

*1. Count Four*

Count Four of the proposed FAC claims that Defendants violated Plaintiff's Fourteenth Amendment substantive due process rights, pursuant to § 1983, by imposing an arbitrary punishment.  FAC ¶ 88.  "Government action resulting in bodily harm is not a substantive due process violation unless the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Lombardi*, 485 F.3d at 79 (citation and internal

quotation marks omitted); *see also Hurd v. Fredenburgh*, 984 F.3d 1075, 1088 (2d Cir. 2021) (explaining that the interference with the plaintiff's substantive due process right "must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection" (citation and internal quotation marks omitted)).

The Court's IRO dismissed Plaintiff's substantive due process claim on two grounds, including that Defendants' conduct as alleged in the original complaint did not rise to the level of conscience-shocking. *Santana*, 2021 WL 2138772, at *7. In seeking leave to replead this claim, Count Four of the FAC provides detailed factual allegations informing the degree to which Defendants' alleged conduct shocks the conscience, more than the original complaint. In light of these more detailed allegations, and in light of the appointment of *pro bono* counsel, Plaintiff essentially urges the Court to vacate the portion of the IRO dismissing the substantive due process claim. *See Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (noting that vacating a previously entered judgment may be appropriate in light of the nature of a proposed amendment and the liberal standard of Federal Rule of Civil Procedure 15(a)).

Even if the allegations of the FAC demonstrated conscience-shocking conduct, however, the Court is not convinced that Plaintiff's claim is properly raised pursuant to the substantive due process provision of the Fourteenth Amendment, given that his Eighth Amendment claims will proceed. The U.S. Supreme Court has held that, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (explaining that, "if a constitutional claim is covered by a specific

constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). Relevant here, a prisoner's claim relating to the conditions of his confinement appropriately arises under the Eighth Amendment, which most directly applies to the context of incarceration by prohibiting cruel and punishment in that context. *See Graham*, 490 U.S. at 395 n.10 (noting that the Eighth Amendment serves as the "primary source of substantive protection" for individuals who have been convicted, whereas claims by pretrial detained and non-detained individuals arise under the Fourteenth Amendment) (citation and internal quotation marks omitted).

Invoking these principles, district courts often decline to consider an inmate's claim related to the conditions of their confinement pursuant to the substantive due process provision of the Fourteenth Amendment and instead consider the claim pursuant to the Eighth Amendment. *E.g.*, *Toussaint v. Guadarama*, No. 3:21-CV-32 (MPS), 2021 WL 1648648, at *6 (D. Conn. Apr. 27, 2021) (dismissing a plaintiff's Fourteenth Amendment due process claim at the initial review stage because the court had already analyzed his claim related to "the dangerous conditions of confinement to which the defendants exposed him" under the Eighth Amendment); *Baltas v. Jones*, No. 3:21-CV-469 (MPS), 2021 WL 6125643, at *4 n.4 (D. Conn. Dec. 27, 2021) (dismissing a plaintiff's Fourteenth Amendment substantive due process claim at the initial review stage because his "claim concerning his restrictive conditions of confinement may be reviewed under the Eighth Amendment"). For these reasons, the Court here finds the Fourteenth Amendment substantive due process claim alleged in Count Four futile, given that it will be adequately covered by Plaintiff's Eighth Amendment claims. Thus, Plaintiff's motion to amend the complaint is denied with respect to Count Four.

### 2. Count Six

Count Six alleges that Defendants violated Plaintiff's Fourteenth Amendment procedural due process rights, pursuant to § 1983, by violating EO 21-1, which established a state-created liberty interest. *Id.* ¶¶ 93–94, 100. "A claim alleging procedural due process violations must show that [the] plaintiff enjoyed a protected interest, and [the] defendants' deprivation of that interest occurred without due process of law." *Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir. 2001); *see also Otero v. Purdy*, No. 3:19-CV-01688 (VLB), 2021 WL 4263363, at *13 (D. Conn. Sept. 20, 2021) (citing *Swarthout*, 562 U.S. at 219, for the proposition that the court "must analyze a claim of violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient").

Relevant to the first question, identifying a protected liberty interest, the U.S. Supreme Court has explained that a state "may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). In the context of incarceration, procedurally protected liberty interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999) ("In other words, actions under the Due Process Clause are reserved for prisoners enduring a hardship that is substantially more grave than hardships they would be likely to endure simply as a consequence of the ordinary administration of the prison."). Accordingly, to determine if an incarcerated plaintiff has a protected liberty interest in freedom from a particular restraint, the court considers whether the restraint "is atypical and significant," and whether "the

21

state has created the liberty interest by statute or regulation." *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (citations and internal quotation marks omitted).

Here, Defendants do not meaningfully dispute that the FAC plausibly alleges that EO 21-1 created a liberty interest for prisoners to be free from in-cell confinement in excess of twenty hours per day. The FAC generally alleges that Plaintiff's prolonged in-cell confinement is atypical, in the sense that it does not comport with the ordinarily scheduled amount of time he would spend out-of-cell but for Defendants' conduct. Similarly, the FAC alleges that Plaintiff's prolonged in-cell confinement is significant, in the sense that it severely harms his mental health. In addition, the FAC alleges that the prolonged in-cell confinement does not comport with the DOC's own procedures governing lockdowns, given that the prolonged confinement is the result of "sickouts" and other non-emergencies, which render the DOC's procedures constitutionally suspect. Finally, because this procedural due process claim seeks to vindicate a liberty interest allegedly created by the State of Connecticut in EO 21-1, the claim presents a legal theory that is distinct from Plaintiff's Eighth Amendment claim; thus, Count Six need not be dismissed in favor of Plaintiff's Eighth Amendment claim. Accordingly, Defendants have not demonstrated that the procedural due process claim raised in Count Six is futile, and the Court grants leave to amend with respect to that claim.

### E.   Counts Two and Five under the Connecticut Constitution

Defendants argue that Counts Two and Five, which claim that they violated Article I, §§ 8, 9, of the Connecticut Constitution by imposing continued isolation and confinement and by imposing an arbitrary punishment, respectively, are futile. Specifically, Defendants contend that Connecticut has no analog to § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau*

*of Narcotics*, 403 U.S. 388 (1971); in other words, Connecticut has not recognized a private right of action to enforce §§ 8 and 9 of the Connecticut Constitution.

Article I, § 8 of the Connecticut Constitution provides, among other things, that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." Article I, § 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." As the Connecticut Supreme Court explained, "[a]lthough neither [§ 8 or § 9 of Article I] of the state constitution expressly references cruel or unusual punishments, it is settled constitutional doctrine that both of our due process clauses prohibit governmental infliction of cruel and unusual punishments." *State v. Santiago*, 318 Conn. 1, 17 (2015). That court, however, has "declined to create an all-encompassing damages action for any and all alleged violations of state constitutional provisions." *ATC P'ship v. Town of Windham*, 251 Conn. 597, 613 (1999). Rather, the question of whether a private cause of action exists "must be determined on a case-by-case basis," turning on a variety of factors, including, among others, the nature of the constitutional provision at issue, the nature of the purported unconstitutional conduct, the nature of the harm, and concerns of separation of powers. *Binette v. Sabo*, 244 Conn. 23, 48 (1998).

In *Binette*, the court recognized a private cause of action pursuant to Article I, §§ 7 and 9 of the Connecticut Constitution to pursue a claim that a police officer executed a warrantless search and arrest. *Id.* at 26, 49. Specifically, the court explained that a private cause of action in that context was "an appropriate remedy for the unique harm likely to result from a violation of article first, §§ 7 and 9," because this private cause of action "comprehends both the fundamental nature of the rights protected by those constitutional provisions and the special significance of the duty breached by their violation." *Id.* at 49. Other courts have noted the limited scope of the court's holding in *Binette*, though, reasoning that "the Connecticut Supreme Court did not intend broadly

to sanction lawsuits for money damages under every provision of the Connecticut Constitution and in every circumstance." *Lopez v. Smiley*, 375 F. Supp. 2d 19, 24 (D. Conn. 2005); *see also Doutel v. City of Norwalk*, No. 3:11-CV-01164 (VLB), 2013 WL 3353977, at *26 (D. Conn. July 3, 2013) (collecting cases in which "Connecticut courts have rejected numerous constitutional tort claims under various sections of the state constitution").

Here, Defendants contend that Plaintiff's claims pursuant to Article I, §§ 8 and 9, of the Connecticut Constitution are futile because no Connecticut appellate court decision has recognized the existence of a private cause of action arising from cruel and unusual punishment.[10]  Because Counts Two and Five present a question of furthering state law on a case-by-case basis with regard to novel and complex claims, the Court declines to exercise supplemental jurisdiction over them.[11] *See* 28 U.S.C. § 1367(c)(1).  Indeed, the U.S. Supreme Court has instructed courts to avoid "depriving state courts of opportunities to develop and apply state law," *see Younger v. N.Y.C. Transit Auth.*, 903 F.2d 146, 163–64 (2d Cir. 1990) (citations and internal quotation marks omitted), particularly when the federal court would otherwise make "[n]eedless decisions of state law," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Citing those principles, federal courts in this district routinely decline to exercise supplemental jurisdiction over purported state constitutional claims for which the Connecticut Supreme Court has not recognized a private cause of action pursuant to *Binette*. *See, e.g.*, *Lopez*, 375 F. Supp. 2d at 25 (declining to exercise supplemental jurisdiction over alleged violations of

---

[10] The Court notes that Article I, § 9 of the Connecticut Constitution was at issue in *Binette* and was found to support a private cause of action.  244 Conn. at 49.  In that case, however, § 9 was read in conjunction with § 7, which protects people in this state from unreasonable searches and seizures, and the court did not meaningfully consider the precise parameters of either section individually.  Moreover, the court emphasized the importance of the facts of that particular case, which involved a search and arrest and are not analogous to the facts of the present case.

[11] Although the Court recognized that a novel legal theory generally weighs against dismissing a claim with respect to Count Three, *see supra*, that reasoning is limited to novel federal claims, and does not apply to novel state law claims.

rights under Article I, §§ 8 and 9 of the Connecticut Constitution and rejecting the plaintiff's argument that the court should "recognize an entire suite of novel Connecticut constitutional tort causes of action for state prisoners in the absence of any guidance from . . . Connecticut decisional law"); *Crowley v. Town of Enfield*, No. 3:14-CV-01903 (MPS), 2015 WL 4162435, at *4 (D. Conn. July 9, 2015) (declining to exercise supplemental jurisdiction over claims raised under §§ 8 and 20 of Article I of the Connecticut Constitution because the plaintiff did not cite, and the court did not find, any state court appellate decisions recognizing a cause of action under those provisions); *Doutel*, 2013 WL 3353977, at *26–27 (declining to exercise supplemental jurisdiction over claims raised under § 15 of Article I of the Connecticut Constitution, given the absence of Connecticut appellate authority addressing whether a private right of action exists). The Court similarly declines to exercise supplemental jurisdiction over Counts Two and Five, and denies Plaintiff's motion to amend with respect to those claims.

### F. Count Seven under Conn. Gen. Stat. § 52-29

Defendants argue that Count Seven, which seeks a declaration that Defendants Quiros, Reis, Rodriguez, and Howard violated EO 21-1, is futile because Connecticut's state statute authorizing declaratory judgments does not permit the claim to be adjudicated in federal court. This argument is without merit. Although the statute provides that "[t]he *Superior Court* . . . may declare rights and other legal relations on request for such a declaration," Conn. Gen. Stat. § 52-29 (emphasis added), that statute cannot be read to preclude a federal district court from exercising supplemental jurisdiction over a § 52-29 claim pursuant to 28 U.S.C. § 1367. The Second Circuit has explained that "there would be substantial doubt as to the constitutionality of a state law purporting to preclude federal court diversity or pendent jurisdiction over a state-created claim." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 n.3 (2d Cir. 1982). Indeed, courts in

this district have routinely considered state declaratory judgment claims pursuant to § 52-29. *Vt. Mut. Ins. Co. v. Samson*, 244 F. Supp. 3d 292, 294 (D. Conn. 2017); *Moy v. State Farm Fire & Cas. Co.*, No. 3:18-CV-01754 (SALM), 2022 WL 198468, at *8 (D. Conn. Jan. 21, 2022). *See also S. Air, Inc., v. Chartis Aerospace Adjustment Servs., Inc.*, No. 3:11-CV-1495 (JBA), 2012 WL 162369, at *5 (D. Conn. Jan. 18, 2012) (interpreting another Connecticut statute, the text of which similarly identified the Superior Court when creating a private cause of action, not to preclude the exercise of federal jurisdiction).

Given that Defendants have not identified a single case in which a federal district court lacked jurisdiction, or declined to exercise supplemental jurisdiction, over a § 52-29 claim due to the statute's express reference to state trial court, Count Seven is not futile on that ground, and the Court grants leave to amend with respect to that claim.

G. Prayer for Declaratory and Injunctive Relief

Finally, Defendants contend that Plaintiff's prayer for relief impermissibly seeks retrospective declaratory relief and, thus, that part of the proposed FAC is futile. Relevant here, the proposed FAC divides the relief Plaintiff seeks into two categories. With respect to the claims against Defendants in their individual capacities, Plaintiff seeks monetary relief. FAC at 27. With respect to the claims against Defendants Quiros, Reis, Rodriguez, and Howard in their official capacities, Plaintiff seeks a declaration that they "violate," in present tense, the Eighth Amendment, the Fourteenth Amendment, and EO 21-1, as well as certain injunctive relief designed to increase the amount of out-of-cell time. *Id.* at 26–27. Defendants contend that the second category of relief against certain Defendants in their official capacities runs afoul of the Eleventh Amendment. The Court disagrees.

The Eleventh Amendment generally prohibits a plaintiff from bringing a federal claim against a state employee in their official capacity for money damages. *In re Deposit Agency*, 482 F.3d 612, 617 (2d Cir. 2007). However, "under the venerable doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *Id.* "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation and internal quotation marks omitted).

Here, in light of *pro bono* counsel's precise drafting, it is clear that Plaintiff seeks the proper relief from the proper parties in compliance with *Ex parte Young* and the Eleventh Amendment. The FAC generally alleges ongoing violations of the Eighth and Fourteenth Amendments, consistent with the use of the present tense in the prayer for relief when describing Defendants' conduct. Moreover, Plaintiff seeks a declaration that the Defendants sued in their official capacities continue to violate the Eighth and Fourteenth Amendments, and he requests prospective injunctive relief as a result of that declaration. By the plain terms of the proposed FAC, Plaintiff does not seek a judgment "declaring that [Defendants] violated federal law in the past," which would fall outside the *Ex parte Young* exception. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Accordingly, the relief sought by the proposed FAC is not futile, and the Court will grant leave to amend with respect to the prayer for relief.

## IV.     CONCLUSION

For the reasons described above, Plaintiff's motion to amend the complaint is GRANTED IN PART and DENIED IN PART.  The motion is DENIED with respect to: all claims against Brighthaupt and Farrell; Count Two; Count Four; and Count Five.  The motion is GRANTED in all other respects.  Plaintiff shall file a Corrected First Amended Complaint in compliance with this Ruling by November 18, 2022.

**SO ORDERED** at Hartford, Connecticut, this 4th day of November, 2022.

   */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE